UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CHONCEY ALLEN STAMPS**    **CIVIL ACTION NO. 3:16-CV-1700**
 **LA. DOC #231297**
**VS.**    **SECTION P**

   **JUDGE ROBERT G. JAMES**

**MIKE OUTZ**    **MAGISTRATE JUDGE KAREN L. HAYES**

### REPORT AND RECOMMENDATION

*Pro se* petitioner Choncey Allen Stamps, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 8, 2016, while incarcerated at the River Bend Detention Center (RBDC). He complains that he, his girlfriend, and children were the victims of excessive force, criminal negligence, attempted murder and child endangerment, following an alleged shoot-out with the police on October 5, 2016. Plaintiff sued Mike Outz and Captain Poche. He seeks compensatory damages in the amount of $3.5 million, a transfer to a different facility and seeks to bring criminal charges against Outz. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

For the following reasons, it is recommended that plaintiff's excessive force complaint be **STAYED** pending the outcome of the on-going criminal prosecution. It is further recommended that petitioner's allegations of violation of privacy and retaliation be **DISMISSED** as frivolous and for failure to state a claim upon which relief may be granted and that petitioner's request to bring criminal charges against the defendants and request for transfer be **DENIED**.

### *Background*

Plaintiff filed the instant suit alleging excessive force on the part of Mike Outz in connection

with an traffic stop and subsequent arrest that occurred on October 5, 2016.

On March 8, 2017, this Court ordered plaintiff to amend his complaint to give more information regarding his claims and any charges stemming from the October 2016 incident. [Rec. Doc. 8] On March 20, 2017, plaintiff amended. [Rec. Doc. 9]

According to Plaintiff, he was arrested and awaits trial on the following charges:

1. Flight from an officer; aggravated flight from an officer, a violation of La. R.S. 14:108.1 (Felony);

2. Underage driving under the influence, a violation of La. R.S. 14:98.6;

3. Produce, manufacture, distribute, dispense, possession of schedule II CDS, a violation of La. R.S. 40:967(A)(1);

4. Manufacture, distribution, possession of a schedule I, CDS, Marijuana, a violation of La. R.S. 40:966 (Felony);

5. Contribution to the endangerment of a minor (2 counts), a violation of La. R.S. 14.91.4;

6. Possession of a firearm/carry concealed weapon by convicted felon, a violation of La. R.S. 14:95.1; and

7. Prohibited Acts/Drug paraphernalia, a violation of La. R.S. 40.1023.1 (3rd felony).

See Rec. Doc. 9-1, p. 5.

The affidavit of probable cause executed by Bill Hopkins of the East Carroll Parish Sheriff's Office, described the incident as follows:

> On 10-5-16 deputy Mike Outz made a traffic stop of a 2014 Nissan on US 65 at Panola Rd. The driver Choncey Stamps was stopped for speeding 74/55. After stopping Stamps was asked if he had any narcotics in the vehicle, Stamps hands Deputy Outz a mason jar with marijuana in it. When Outz tells Stamps he is going to run his K-9 dog around the vehicle Stamps jumps back into his vehicle & takes off headed South. Stamps drives at speeds exceeding 120 mph running cars off the road,

>passing on the right hand side + running red lights. Stamps was stopped on Riverside Dr. where he was placed in a unit for transportation. Stamps was stating he was high that's why he run. After taking Stamps to RBDC for booking he was given a drug test where he tested positive for marijuana + cocaine. Stamps was brought to the intoxilyzer room to be given a breath test. While asking questions to Stamps he would have his eyes closed + I would have to ask the question several times, his speech was slurred + he could not pay attention. Stamps stated he as high and had been up for several days. The urine test was given at Riverbend Detention Center.

Rec. Doc. 9-1, p.6

Plaintiff provided a different account of the events. He claimed that he was driving with his girlfriend and two minor children in the car when he was stopped for speeding. He claims that he did not know that the vehicles perusing him were law enforcement, that he was unarmed, and that the officer opened fire on his vehicle in an attempt to harm him and his family.

Moreover, in his amended complaint, he alleges that Captain Poche has invaded his privacy by viewing and copying his legal paperwork. Furthermore, he asserts that in retaliation for the allegations contained in the instant suit, Lt. Frost spoke to him in a harsh manner, causing him to fear for his safety.

*Law and Analysis*

*1. Screening*

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915 and 1915A, and 42 U.S.C. § 1997e(c).

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490

U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted).

A civil rights plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

### *2. Heck/Wallace v. Kato Considerations*

Plaintiff has been charged with numerous violations, including aggravated flight from an officer, a violation of La. R.S.14:108.1 which provides:

> A. No driver of a motor vehicle shall intentionally refuse to bring a vehicle to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle.
>
> B. Whoever commits the crime of flight from an officer shall be fined not less than one hundred fifty dollars, nor more than five hundred dollars, or imprisoned for not more than six months, or both.
>
> C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle.
>
> D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle commits at least two of the following acts:
>
> (1) Leaves the roadway or forces another vehicle to leave the roadway.

>   (2) Collides with another vehicle.
>
>   (3) Exceeds the posted speed limit by at least twenty-five miles per hour.
>
>   (4) Travels against the flow of traffic.
>
>   E. Whoever commits aggravated flight from an officer shall be imprisoned at hard labor for not more than two years.

Plaintiff awaits trial on this charge as well as the other six charges enumerated above. He claims that the defendant used excessive force against him when he was being pursued in an apparent high speed chase. If plaintiff is ultimately convicted of aggravated flight from an officer, he may not be entitled to seek compensatory damages for his excessive force claim until such time as the conviction has been declared invalid. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), which held:

>   ... in order to recover damages for allegedly unconstitutional ... imprisonment or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of writ of *habeas corpus*, 28 U.S.C. § 2254...
>
>   Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, at 486-487.

*Heck* prohibits the use of § 1983 complaints as a means of collaterally attacking outstanding state convictions. Further, an excessive force claim may be barred by *Heck* if it would imply the invalidity of a conviction for aggravated flight from an officer. *Compare Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996) (Because self-defense is a justification defense to the crime of battery of

5

an officer, plaintiff's claim that officers used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question whether the police applied reasonable force depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction.) Likewise, Stamps' claims are clearly connected to the validity of his conviction for aggravated flight from a police officer. *See Gray v. Raymond, 2017 U.S. Dist. LEXIS 59645,* at *10 (E.D. La. Feb. 6, 2017).

On the other hand, since the criminal prosecution remains pending, *Heck* does not yet apply. *See Wallace v. Kato*, 549 U.S. 384 (2007) (The *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges.) However, federal courts have been authorized to stay civil rights claims attacking the legality of a detainee's arrest, prosecution, and detention until such time as the allegedly improper state prosecution has been concluded. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("If a plaintiff files a false arrest claim before he has been convicted (<u>or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial</u>), it is within the power of the district court ... to stay the civil action until the criminal case ... is ended.")

Thus, in accordance with the principals announced in *Heck v. Humphrey, Hudson v. Hughes,* and *Wallace v. Kato,* plaintiff's excessive force claims – to the extent that plaintiff seeks compensatory damages – must be stayed pending the results of the on-going criminal prosecution.

### 3. Criminal Charges

Plaintiff also seeks to bring criminal charges against the officers for battery and attempted

6

murder of his family. There is no constitutional right to have a person criminally prosecuted. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir.1990). The prosecution of criminal actions in the federal courts is a matter solely within the discretion of the Attorney General of the United States, and duly authorized United States Attorneys. The prosecution of criminal actions in the Louisiana courts is a matter solely within the discretion of the Louisiana Attorney General and the various District Attorneys. See La. C.Cr.P. arts. 61 and 62. To the extent that plaintiff demands that the defendants be prosecuted, his claim is frivolous.

### *4. Invasion of Privacy*

Plaintiff makes allegations of invasion of privacy and retaliation on the parts of Captain Poche and Lt. Frost. To state a claim under § 1983, a plaintiff must allege a violation of the rights secured by the Constitution or laws of the United States and demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). Prisoners maintain those constitutional rights which are not inconsistent with the legitimate interests of the prison administration. *Hudson v. Palmer*, 468 U.S. 517, 525-26, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). In *Hudson*, the Supreme Court held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his cell. " *Id*. See also *Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993) (noting that *Hudson* held prisoner has no privacy interest in his prison cell nor possessory interest in personal property). Thus, the federal courts have found that the Fourth Amendment prohibition against unreasonable searches does not attach to the prison cell. The legitimate prison objective of maintaining constant security far outweighs a prisoner's right of privacy, assuming such a right does exist. *Bell v. Wolfish*, 441 U.S. 520, 539-41, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Indeed, a prisoner does not have an

expected privacy interest in his personal belongings or in his legal materials. See *Busby v. Dretke*, 359 F.3d 708, 715-16 (5th Cir. 2004) (prisoner has no Fourth Amendment privacy interest in cell nor in unsealed letters that were later used against him at trial).

In this case, plaintiff alleges that his legal materials were seized, searched and copied. Even assuming that he had a privacy interest in these materials, prison officials are afforded much discretion in such administrative matters. *Bell, supra*, 441 U.S. at 540 & n. 23. Federal courts will not intervene in legitimate administration except in the case of a constitutional violation. *Id.* The mere viewing and copying of plaintiff's property does not amount to a constitutional violation.

### 5. *Retaliation*

Plaintiff also claims that in retaliation for filing the instant suit, and after viewing the legal paperwork discussed above, Lt. Frost spoke harshly to him on one occasion. When Plaintiff stated that he was unable to see Captain Poche regarding the legal paperwork because no one would call for him, Lt. Frost responded, "Tough luck." Plaintiff replied, "Man, that's cold," to which Frost responded, "Yea that's cold! Stay your ass away from around here because it can get colder, ice cold!" [Rec. Doc. 12, p.3]

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the

ordinary person from further exercise of his rights. *Id.* Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Lt. Frost's harsh words directed at plaintiff are no more than de minimis. See *Gonzales v. Currie*, 2013 U.S. Dist. LEXIS 184012 (S.D. Tex. Sept. 23, 2013)("Officer Hackman's adverse retaliatory act of filing a minor disciplinary case against plaintiff resulting in plaintiff's 5-day loss of recreation and a verbal reprimand is no more than *de minimis*.") Accordingly, this claim should be dismissed as frivolous and for failing to state a claim upon which relief may be granted.

### 6. Transfer

Finally, in his Amended Complaint, Plaintiff seeks transfer to another facility. A prisoner has no constitutional right to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. See *Olim v. Wakinekona*, 461 U.S. 238, 245-46, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989); *Maddox v. Thomas*, 671 F.2d 949, 950 (5th Cir. 1982). Plaintiff is not entitled to this relief.

### *Conclusion and Recommendation*

Based on the foregoing,

**IT IS RECOMMENDED** that petitioner's allegations of violation of privacy and retaliation be **DISMISSED** as frivolous for failure to state a claim upon which relief may be granted.

**IT IS FURTHER RECOMMENDED** that petitioner's request to bring criminal charges against the defendants and request for transfer be **DENIED**.

**IT IS FURTHER RECOMMENDED** that this action – insofar as it seeks monetary damages for excessive force– be **STAYED** under the following conditions:

> **a. If plaintiff intends to proceed with his claims, within thirty (30) days of the date the criminal proceedings against him have concluded he must file a motion asking the court to lift the stay;**
>
> **b. If the stay is lifted and the court finds plaintiff's claims would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed at that time, absent some other bar to suit. See *Wallace*, 127 S.Ct. at 1098; and,**
>
> **c. In light of the stay, plaintiff should not file any more documents (other than an objection to this Report and Recommendation) in this action until the state court proceedings have concluded; and**
>
> **d. Defendants shall not be required to answer during the pendency of the stay, and Plaintiff may not seek a default judgment or conduct any discovery.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, July 21, 2017.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**